JOHN P. STOCKTON, attorney-general (on the relation of John R. and Frank W. Miller, informants), and JOHN R. and FRANK W. MILLER,

*v.*

THE AMERICAN TOBACCO COMPANY et al.

Where a supplemental bill is filed under authority from the court, had upon notice to the defendants, and makes an essentially different case from that contemplated and intended by the permission given, it will be ordered to be taken from the files.

On motion to strike supplemental information and bill from the files.

The original bill and information was filed by the attorney-general in behalf of the State of New Jersey, and by the relators for themselves and other cigarette jobbers in New Jersey.

The case presented by it is, that five parties who have heretofore manufactured and sold ninety-five per cent. of the cigarettes manufactured and sold in the United States and have competed with each other in that business—conspiring together to monopolize and control the entire business of manufacturing and selling paper cigarettes in the United States of America and to crush out rivals and destroy and prevent competition among themselves and others engaged in that business—consolidated their respective

businesses into one, and, under the laws of New Jersey, organized a corporation for the purpose of conducting that single business, and then, with the purpose stated, instead of selling outright to jobbers, they have made and yet make the jobbers, in the product of their manufactures, their agents, and have fixed prices at which cigarettes consigned to them shall be sold, reserving the right to withdraw the goods consigned and to terminate the agency if their cigarettes shall not be handled to their satisfaction, the tendency of such combination and conduct being to prevent the jobbers who deal with the American Tobacco Company from handling the cigarettes manufactured by competing and rival manufacturers.

The relators and complainants claim to be jobbers, doing business in Newark, in this State, who, because of the conspiracy complained of, have been deprived of the advantage of a business with the American Tobacco Company because they sell cigarettes manufactured by the National Cigarette and Tobacco Company, and they suffer special injury from the combination complained of.

The relief sought is a decree which will *declare* that the American Tobacco Company was organized for an unlawful purpose and is without power to use its franchises for the purpose of destroying competition in the manufacture and sale of paper cigarettes, or for the purpose of destroying or injuring the business of the National Cigarette and Tobacco Company, or of the relators, or of any jobber customers of the National Cigarette and Tobacco Company, and which will *restrain* the defendants from using the corporate organization of the American Tobacco Company in promoting the manufacture and sale of paper cigarettes, and from transacting business in the name of that company, and from refusing to sell cigarettes to the relators, and from the use of the franchises of the American Tobacco Company to stifle competition in the business of manufacturing paper cigarettes, and to destroy the business of the relators, the business of the National Cigarette and Tobacco Company or the business of any jobbers or dealers who may desire to be customers of the National Cigarette and Tobacco Company, and will *grant* to

the attorney-general or the relators other relief which may be just.

The bill and information do not contemplate the prevention of any injury to the relators and complainants or the State of New Jersey, by depreciation of the price of leaf tobacco in the States of Virginia and North Carolina, which may be consequent upon the consolidation of the business referred to.

In February, 1895, after the cause was at issue and the testimony had been partially taken, the attorney-general and the complainants, by their petition, presented upon notice to the defendants, represented to the chancellor that the alleged illegal combination was not only such as was mentioned and set forth in the information and bill, but, in the language of the petition,

"it also operated very oppressively and injuriously upon a large number of persons in the States of North Carolina and Virginia, wherein was grown the leaf tobacco out of which said cigarettes were made, and that the combination led, not only to abolition of all competition in the sale of such paper cigarettes, but also in the purchase of raw material of which they are manufactured, and that thereby great injury was done to the public in that part of the country where such tobacco was grown; that they had applied to the chancellor to amend their information and bill by inserting therein a new paragraph, to be numbered ten and a half, as follows:

"That the principal quantity and amount of raw or leaf tobacco from which paper cigarettes are made, has been and still is raised in the States of Virginia and North Carolina by farmers and tobacco growers, large numbers of whom have for a long time been and still are engaged in the business of raising such tobacco for sale, and the principal market for such product was among the local tobacco dealers and brokers in tobacco, and the manufacturers of cigarettes, who competed with each other for the purchase of such tobacco, and made a varied and extensive local market of the active competition between said brokers and dealers and manufacturers and other purchasers of said tobacco, the producers thereof were enabled at all times to secure the highest market price for their said product, and while competition was kept up in the business of making and selling cigarettes as herein mentioned, the said growers and producers of raw tobacco had the advantage of competition among the purchasers of the tobacco so raised among them, out of which an extensive and remunerative business had grown up, not only of great value to such tobacco growers, but also of great value to such local dealers, brokers and other competitive dealers in said product, and also of great advantage to the several communities in which the said kinds of business were carried on, and affording well-remunerative labor to a large number of laborers and workmen, merchants, brokers and dealers who depended upon the continued prosperity of said business for the support of themselves and their families,"

and by adding to paragraph fifteen, then existing, the following language :

"And also with the further wicked and malicious intent, unlawfully to control the purchase of said raw or leaf tobacco, so that they would have no competitors in the market for such producers, and that they might by such means compel all persons so engaged in raising tobacco to sell their product at whatever price said combination might fix, and that the effect of such combination had been not only to greatly depress the selling price of such product to manufacturers, and to inflict great loss on said producers of tobacco, but also to break up and drive out of business the local dealers and brokers hereinabove mentioned who had been accustomed to compete with each other for the purchase of said tobacco, and has thereby inflicted great loss on said producers of tobacco and said local dealers therein, and great distress upon their families and on the communities in which they live and in which they had before such legal combination carried on their said business,"

but in no other respect; that the chancellor denied the application to amend, saying, among other things :

" The new issue proposed, I think, is of doubtful materiality in the case either to the public represented by the attorney-general or to the relators. It is difficult to perceive how either can he injuriously affected by the reduction in the price of raw tobacco in the States of North Carolina and Virginia. It may be that in the immediate practical working of a combination to monopolize the manufacture and sale of certain products from raw tobacco, the profit from depreciation in the price of the raw material will enure to the benefit of the monopolists, but the natural ultimate tendency of such reduction appears to be, not to increase the price of the manufactured product to the customer, but to benefit him by a reduction in that price, and incidentally to benefit the relators by the increased consumption of the product which will naturally ensue from its being cheapened.

"I understand from the statement of counsel for the relators that it is proposed to examine a large number of witnesses upon this new issue.

" It would be a hardship to require the defendant to go into such an examination before it shall have opportunity to have it deliberately adjudged that such issue is proper and material in this suit. Such adjudication cannot, with satisfaction, be had upon this motion, of which only five days' notice is necessary.

"The proposed amendment so substantially alters the case, and is of such consequence, that the complainants should resort to supplemental bill to introduce it. *Seymour* v. *Long Dock Co., 2 C. E. Gr. 169.* I will deny the motion;"

and that pending proceedings looking to the proposed amendment, additional facts in regard to the effect of such combination

Stockton v. American Tobacco Co.

on the public, as set forth in the proposed amendments, had come to their knowledge, rendering the proof they desired to introduce, as indicated, important and essential, and they, therefore, prayed that they might have leave

"to file a supplemental bill in said cause, for the purpose of introducing into the information and complaint in the cause, such allegations as those herein set forth by way of amendment, or such other allegations of that character as they shall be advised by counsel will permit them to introduce and offer proof which would not be admissible under the present allegations of said information and bill."

The parties having been heard upon that petition, the chancellor made an order that the prayer of the petition should be granted, reciting in said petition as follows:

"A petition having been presented to the chancellor on behalf of the attorney-general and the complainants in the above-stated cause, in which it was prayed that the court grant leave to said petitioners to file a supplemental bill in said cause for the purpose of introducing into the information and complaint in said cause, by way of amendment, certain allegations in said petition set forth, relating to the illegal and injurious effect alleged to be produced upon the business of growing, producing and dealing in leaf or raw tobacco in the States of North Carolina and Virginia, by the combination complained of in said original information and bill, as by the proposed amendment set forth in said petition (to which reference is hereby made) will more fully appear."

The supplemental bill and information, which has been filed under authority of that order, purports to be by the attorney-general on behalf of the State of New Jersey " and the public," and by the complainants " in behalf of themselves and the public," and it broadens its complaint so as to reach injury " to the public in that part of the country where such tobacco was grown," and, as well, to the public generally, and seeks relief accordingly.

*Mr. Richard V. Lindabury* and *Mr. Gilbert Collins*, for the motion.

*Mr. Thomas N. McCarter, contra.*

THE CHANCELLOR.

The present motion is based upon the objection that the supplemental bill and information is broader than the authority under which it was filed. The insistment is that the intention of the court was to grant permission to the informant and complainants to supplement their case by allegations which would show an injury to the State of New Jersey and to the complainants and other cigarette jobbers in New Jersey, through the effect of the combination charged, upon the growing, producing and dealing in leaf or raw tobacco in Virginia and North Carolina, and not to extend the suit to the assistance of the persons who are engaged in such occupations. The chancellor's remarks upon the application to amend the original bill and information, when the complainants and attorney-general were required to act by supplemental bill and information, expressly state his understanding that the complainants' object was in accordance with this insistment. The allegation sought to be introduced by the proposed new section $10\frac{1}{2}$, and the addition to section 15, undoubtedly charged grievances to tobacco growers, brokers &c. in Virginia and North Carolina, but as there was no suggestion that the limited range of the complaint, in behalf of the State of New Jersey and cigarette jobbers of New Jersey, should be broadened to include other affected parties, it was assumed that the allegations would in some way show injury to those who were then within the protection of the complaint. When leave to file the supplemental bill and information was asked, the request was avowedly made for the purpose of introducing the amendments theretofore proposed, the expression of the petition being

"for the purpose of introducing into the information and complaint in this cause such allegations *as those herein set forth by way of amendment or such other allegations of that character as*" &c.

There was no suggestion that the scope of the bill and information was to be enlarged to the extent of the instrument now objected to. The order which gave authority to file the supplemental complaint recited its inducement to be to allow the intro-

duction, *by way of amendment*, of allegations relating to matter indicated by *proposed amendments set forth in the petition* upon which the order was based.　The change in the scope of the suit was a substantive matter and not a mere incident to the proposed amendments, authority for which might be implied from their allowance.　An allegation incidental to the amendment would rather have shown the applicability of the matter introduced to the existing scope of the suit.　If the design was to reconstruct the suit by the introduction of an additional case, that design should have been clearly disclosed, so as not only to afford the defendants an opportunity to be heard as to the propriety of the change, but so that that object would have commanded the court's consideration.

It is obvious, I think, as the complainants and informant have acted upon leave of the court, had upon notice to the defendants, which was intended by the court and understood by the defendants, to authorize the presentation of an essentially different case from that which the supplemental bill and information makes, that the motion of the defendants should be granted.　*Buckingham* v. *Corning, 2 Stew. Eq. 238.*　I will, therefore, order that the supplemental bill and information be taken from the files.